# IN THE COURT OF APPEALS OF IOWA

No. 18-1618
Filed January 9, 2019

**IN THE INTEREST OF J.D., T.D., C.D., D.D., and E.R.,**
**Minor Children,**

**S.B., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Montgomery County, Amy L. Zacharias, District Associate Judge.

A mother appeals the termination of her parental rights to her children. **AFFIRMED.**

Ivan E. Miller of Billings & Mensen, Red Oak, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

DeShawne L. Bird-Sell of Sell Law, PLC, Glenwood, guardian ad litem for minor children.

Considered by Potterfield, P.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

A mother appeals the termination of her parental rights to five of her children. She contends the State failed to prove the grounds for termination by clear and convincing evidence. She also contends termination is contrary to the children's best interests and one of the statutory exceptions to termination applies. Finally, she contends the State failed to make reasonable efforts to reunify the family and requests the decision to terminate be delayed six months. We review her claims de novo. *See In re A.*S., 906 N.W.2d 467, 472 (Iowa 2018).

**I. Background Facts and Proceedings.**

This appeal concerns five children who ranged in age from four to thirteen years old at the time of termination. In May 2017, the juvenile court adjudicated the children to be in need of assistance (CINA) due to the mother's relationship with a registered sex offender, who married the mother in March 2017.[1] In the CINA order, the juvenile court noted that the mother "seemed to have a very hard time understanding why the court is concerned with [her husband] being around the children." When the mother continued to allow her husband to be around the children in violation of a no-contact order, the juvenile court removed the children from her care. Concerns were also raised about the suitability of the mother's home, which was cluttered with trash and debris, had a strong stench of animal urine, and was infested with cockroaches.

---

[1] The mother and her husband later had a child together, though that child is not at issue in this appeal.

The State filed a petition to terminate the mother's parental rights in May 2018. The matter came to a hearing on August 23, 2018. On September 7, 2018, the juvenile court entered an order terminating the mother's parental rights.

**II. Discussion.**

**A. Grounds for termination.**

Before terminating parental rights, the juvenile court must find clear and convincing evidence supporting one of the grounds for termination listed under section 232.116(1) (2018). *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). The juvenile court found clear and convincing evidence supported the grounds for termination of the mother's parental rights on the grounds listed in Iowa Code section 232.116(1)(d) and (f). We may affirm the termination if clear and convincing evidence supports one of these grounds. *See In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).

The juvenile court may terminate parental rights pursuant to section 232.116(1)(f) if there is clear and convincing evidence of the following:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The mother does not dispute that the first three elements under this section have been met. She instead contends the State failed to prove the children could not be returned to her custody at the time of the termination hearing. *See* Iowa Code

§ 232.116(1)(f)(4); *D.W.*, 791 N.W.2d at 707 (interpreting the term "at the present time" to mean "at the time of the termination hearing"). Specifically, the mother claims the children can be returned to her care because she has ended her relationship with her husband and resolved the concerns about her housing.

Although the mother testified that she had filed for divorce from her husband in May 2018 and had no intention of resuming a relationship with him so she could focus on her children, the service providers questioned her claims. The evidence indicates the mother has been dishonest about her contact with her husband. The children have reported that once the case is over, the mother would take them to see her husband. She also allowed her husband's son, who has a history of sexually abusing a small child, to attend visitation with the children in June 2018. The Iowa Department of Human Services (DHS) worker assigned to the family testified,

> Despite all the therapy, all the [behavioral health intervention services], all the instruction, all the therapy for over a year, [the mother] still makes the decision of allowing her children access to people who have sexually abused little children. She's done it with [her husband], and she also did it just on June 19th with [her husband's son], and when I addressed that concern with her, she immediately entered into a defensive mode of he wasn't convicted of sexual abuse.
>     And so what I see, and I believe it's documented in my report, there's a pattern that [the mother] displays to me where instead of aligning with her children and their safety and their well-being and demonstrating anticipatory guidance that my child might be harmed, she aligns herself, typically, with the perpetrator and starts defending him, making excuses for why it is this way instead of protecting those children. So that is my concern . . . . It's that lack of protective capacity that she displays.

The in-home family services supervisor agreed with this assessment.

The evidence also contradicts the mother's claim that she has remedied the concerns about the condition of her home. The DHS worker testified about the conditions of the home she encountered during a visit on July 25, 2018, less than one month before the termination hearing:

> [O]n the outside rear entrance, there's still garbage and debris, and I recommended that she clean that up, but what I was focusing on is the interior of the home because that's what is preventing the [DHS] from making the recommendation for family interaction in a home-like setting, which is what I'd really like to see for the kids.
> I would say when I first walked in, initially I thought things were better because I didn't get the horrific smell of urine; however, the minute I opened the kitchen door, there's still a strong scent of animal urine, and you can smell that pretty strongly in the kitchen, the bathroom off of that, the dining area and the living room area. It's just a real strong, offensive odor that if you come out of the home it's on you as well, and it's necessary for you to bathe because it's so strong.

The worker reported that two cats, an adult dog, three puppies, fish, and a rabbit were present in the home at that time.

Following our de novo review of the evidence, we agree that the children could not be returned to the mother's care at the time of the termination hearing. Accordingly, the grounds for termination pursuant to section 232.116(1)(f) have been met.

**B. Best interests of the children.**

We must next consider whether termination is in the children's best interests. *D.W.*, 791 N.W.2d at 706-07 ("If a ground for termination is established, the court must, secondly, apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights."). In making the best-interests determination, our primary considerations are "the child's safety," "the best placement for furthering the long-

term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (quoting Iowa Code § 232.116(2)). The "defining elements in a child's best interest" are the child's safety and "need for a permanent home." *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially).

The evidence shows that in spite of the services offered to her over the course of a year, the mother has been unable to demonstrate a commitment to protecting the children and lacks an understanding of the harm she has exposed them to by allowing them to be in contact with sex offenders. Terminating the mother's parental rights will provide the children the safety and permanency they require. Accordingly, termination is in the children's best interests.

## C. Exceptions to termination.

The mother next argues one of the exceptions to the termination statute should be applied to avoid termination of her parental rights. Under Iowa Code section 232.116(3)(c), the court need not terminate parental rights if the court finds "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." For the reasons stated above, we concluded termination is in the children's best interests. For the same reasons, we conclude that terminating the mother's parental rights would be less detrimental to the children than the harm that continuing the parent-child relationship will cause. We decline to apply the exception to termination provided in section 232.116(3)(c).

**D. Reasonable efforts.**

The mother also challenges the sufficiency of the services offered to reunify the family. Iowa law requires the DHS to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(9). The requirement "is not viewed as a strict substantive requirement of termination" but rather "impacts the burden of proving those elements of termination which require reunification efforts." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).

Although the State has an obligation to make reasonable efforts toward reunification of the family, "a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing." *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005).

> In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding. If a parent has a complaint regarding services, the parent must make such challenge at the removal, when the case permanency plan is entered, or at later review hearings. Moreover, voicing complaints regarding the adequacy of services to a social worker is not sufficient. A parent must inform the juvenile court of such challenge.

*In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) (citations omitted).

The mother claims the DHS should have allowed her less restrictive visitation once her home was clean and approved for visits by the DHS. The evidence shows that the home was not appropriate for the children as of the DHS worker's visit one month before the termination hearing. The mother did not request another visit by the DHS worker to show she had made the necessary

changes until the day of the termination hearing.  On the record before us, we find the reasonable-efforts requirement was satisfied.

### E.  Additional time.

Finally, the mother asks for additional time to reunite with the children.  *See* Iowa Code § 232.104(2)(b) (allowing the court to continue placement of the child for an additional six months if it is determined "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period").  However, delaying permanency is not in the child's best interests. Children are not equipped with pause buttons, and delaying their permanency in favor of the parents is contrary to the children's best interests.  *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (noting children must not be deprived permanency on the hope that someday the parent will be able to provide a stable home); *In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987).  Once the grounds for termination have been proved, time is of the essence.  *See A.C.*, 415 N.W.2d at 614 ("It is unnecessary to take from the children's future any more than is demanded by statute.  Stated otherwise, plans which extend the [statutory] period during which parents attempt to become adequate in parenting skills should be viewed with a sense of urgency."); *see also In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989) (noting that once the time period for reunification set by the legislature has expired, "patience on behalf of the parent can quickly translate into intolerable hardship for the children").  We decline to delay the children's permanency an additional six months.

**III. Conclusion.**

We affirm the termination of the mother's parental rights to her children.

**AFFIRMED.**